IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 11-00118-01-CR-W-DGK |
| GEORGE HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Before the court is defendant's motion to suppress statements. Because defendant has failed to raise any issue requiring a factual determination, no evidentiary hearing will be held. I find that defendant has (1) failed to identify any statement, (2) failed to explain why he believes any statement was obtained illegally, and (3) raised only issues that have already been litigated or are not ripe for adjudication until after a conviction and resolution of a direct appeal, there is no basis to suppress any statement in this case. Therefore, defendant's motion should be denied.

In the middle of the night on February 28, 2011, Officer Kenneth Moore stopped defendant for speeding. Before defendant stopped his car, Officer Moore observed defendant reaching below the driver's seat and center console which caused the officer to suspect that defendant was attempting to hide or retrieve something. Once defendant was stopped and provided identification, the officer learned that defendant was driving with a revoked license and he was placed under arrest. The car was searched before towing, and a loaded 9mm semi-automatic handgun was recovered under the driver's seat. Officer Moore commented about the finding, and defendant said, "That's my wife's, it ain't mine." The gun was determined to be stolen.

On May 23, 2011, an indictment was returned charging defendant with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On January 12, 2012, the government filed a notice of applicability of 18 U.S.C. §

924(e) providing for an enhanced punishment under the Armed Career Criminal Act. Defendant, while represented by counsel, filed a motion to suppress (document number 54) arguing that he was stopped without reasonable suspicion. I held a hearing on April 9, 2012, after which the motion to suppress was denied.

The evidence presented at that hearing included a dash cam video which clearly showed defendant speeding, braking for a lengthy period in order to slow down, bending over and appearing to hide or retrieve something from his console or under the seat, and eventually stopping on the left side of Highway 71. When he finally stopped and an officer approached the car, the officer smelled marijuana coming from the car. Defendant was unable to produce a driver's license, and the officer learned through dispatch that defendant's license had been revoked. He also had marijuana in his wallet which he was attempting to conceal when he was asked to get out of the car.

Because defendant was being arrested and his car was parked on the left side of the highway, it was towed which required an inventory search. Prior to towing the officer asked defendant if there was anything in the car which may be a hazard to the searching officers. Defendant said, "No." The officer began searching the car and came upon a loaded handgun. This upset him because when he looked under the seat, the barrel of the gun was pointed at him. He said to defendant, "You know I asked you if there was anything in the goddamn car. There's a freaking gun." Defendant said, "Well, it's probably my wife's." Because defendant had a felony conviction, he was also arrested for being a felon in possession of a firearm. The officer learned the gun had been stolen.

During the hearing, defendant testified that he was only going 55 miles per hour, that he saw the officer try to pull him over but he ignored the officer because he did not believe he was doing anything wrong, and that he was hit with a spot light before the officer attempted to pull him over. I did not find defendant's testimony credible because it conflicted with what I

2

observed on the dash cam video, including the fact that defendant said, "Well, I know" when the officer told him he had been pulled over for going "way fast."

In addition to seeking suppression of the firearm in that original motion, defendant also sought suppression of his statement on the scene on the ground that he had not been advised of his Miranda rights. The following legal findings were made in the Report and Recommendation which was adopted by the district judge:

> Finally, defendant argues that any statement that the gun belonged to his wife is inadmissible because he was not advised of his Miranda rights. Officer Moore testified that after finding the gun in defendant's car, he was upset because he had asked defendant if there was anything in the car he needed to know about. Officer Moore believed this was a safety issue. He testified that it was a "little unnerving" when he found "the barrel of a gun sticking in my face when I go underneath a seat." Officer Moore said to defendant, "You know I asked you if there was anything in the goddamn car. There's a freaking gun." He testified that defendant said, "Well it's probably my wife's."
>
> Under the public safety exception to the Miranda requirement, a suspect's answer may be admitted into evidence if it was obtained in response to a pre-Miranda question asked in furtherance of public safety and not designed solely to solicit testimonial evidence. New York v. Quarles, 467 U.S. 649, 655-656 (1984); United States v. Everman, 528 F.3d 570, 572 (8th Cir.), cert. denied, 129 S. Ct. 627 (2008). "The exception does not depend upon the questioning officers' subjective motivation," rather, it is analyzed under an objective standard and "applies when 'police officers ask questions reasonably prompted by a concern for the public safety.'" United States v. Everman, 528 F. 3d at 572, citing United States v. Liddell, 517 F.3d 1007, 1009 (8th Cir.), quoting New York v. Quarles, 467 U.S. at 656. The public to be protected can include the officers themselves. New York v. Quarles, 467 U.S. at 658 n. 7, 659; United States v. Everman, 528 F.3d at 572.
>
> In United States v. Liddell, 517 F.3d 1007 (8th Cir. 2008), officers stopped a car driven by Liddell who was arrested when a check revealed that he was barred from driving in Iowa. Liddell was arrested and placed in a patrol car while his car was searched. When an officer discovered an unloaded .38 caliber revolver under the front seat, he showed the gun to another officer and asked whether Liddell's person had been thoroughly searched after the arrest. Liddell was removed from the patrol car and asked, referring to Liddell's car, "Is there anything else in there we need to know about? That's gonna hurt us?" The other officer repeated, "That's gonna hurt us? Since we found the pistol already." Liddell laughed and said, "I knew it was there but . . . it's not mine," before telling the officers there were no other weapons in his car.
>
> Liddell argued that the public safety exception did not apply because, at the time the officers asked the question that prompted his incriminating admission, there was no longer an objectively reasonable need to protect the police or the public from any immediate danger because the revolver had been found, Liddell was handcuffed and under the control of the two officers, and there were no passengers or nearby members of the public who could have accessed or been harmed by the contents of Liddell's car.

3

> The Eighth Circuit disagreed and held that the public safety exception to Miranda applied:
>
>> Our prior cases recognized that the risk of police officers being injured by the mishandling of unknown firearms or drug paraphernalia provides a sufficient public safety basis to ask a suspect who has been arrested and secured whether there are weapons or contraband in a car or apartment that the police are about to search. Here, when the officers found Liddell's concealed .38 caliber revolver, they had good reason to be concerned that additional weapons might pose a threat to their safety when they searched Liddell's car incident to a late-night arrest.
>
> United States v. Liddell, 517 F.3d at 1009-1010.
>
> Here Officer Moore was upset about finding a gun pointed at him when he checked under the driver's seat of the car. His statement to defendant ("You know I asked you if there was anything in the goddamn car. There's a freaking gun.") is the equivalent of the statement at issue in the Liddell case and was properly made without Miranda warnings pursuant to the public safety exception.

On January 2, 2013, defendant filed a second motion to suppress, this time after having waived his right to assistance of counsel (document number 138). In support of his motion, defendant states in part as follows:

> Motion for second "suppression hearing," due to the fact of "racial profiling," "ineffective counsel," lack of "evidence" by the defense counsel of "zero exhibits" during suppression hearing, lack of time for the government's response of two days before the suppression hearing, violation of "Miranda rights," violation of "Fifth and Sixth Amendment rights," and the defendant's Constitutional rights. The defendant would prefer the case to be heard by a "District Judge."
>
> Comes now, defendant George B. Harris Pro Se, desires to exercise his privilege and defendant has the right to do so. Justifications for the suppression of statement in Federal Court. The suppression of statement for violations of the rules developed under Miranda v. Arizona, 384 U.S. 436 (966), and it's [sic] progeny. In addition suppression of involuntary statements under the Fifth Amendment, statements taken in violation of defendant's Fifth and Sixth Amendment right to new counsel, statements taken after an unnecessary delay between "arrest" and "presentment," in violation of the "due process clause" and "federal law," and statements "elicited" after law enforcement officers violation of the Fourth Amendment Prohibition against unreasonable searches and seizures, and statements of non-testifying co-defendants under the Confrontation Clause of the Sixth Amendment. Finally exceptions to the ground for suppression of statements and, particularly, the application of the Harmless Error doctrine during a determination of the admissibility of a defendant's statement at trial.
>
> * * * * *
>
> In the final support of this motion: 1. The officer at the stop said, He smelled illegal drugs (probable cause) yet never gave any kind of road side test to check. (2) No drugs was viewable in the vehicle. (3) The officer never got permission from the driver

4

Case 4:11-cr-00118-DGK   Document 151   Filed 03/07/13   Page 4 of 10

to search vehicle. (4) The officer did not have reason for the stop (speeding not supported by radar) (5) Officer made an illegal stop based off ("racial profile"). Quote, "Officer you where [sic] going way fast end quote not supported!! There was only a 2-min window from stop  U.S. V. Hernandez, 108 F.3d 1450 (9th Cir. 1997) (Execamp)[1] Rule 403 - exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.  Felony stop and Miranda rights under Thompson v. Keahane, 5616 U.S. 98, 112 (1995) rule; defendant was placed into custody when the KCPD made a felony (illegal) stop. The defendant then was not free to leave and was questioned without rights been read.  Custody (5.03.02) there for any statements made cannot be used. The defendant was not charged with speeding which was the supposed reason for the (illegal) felony stop.  No relevant reason was given for the stop.

On January 7, 2013, I entered an order (document number 140) which stated in part as follows:

> Before the court is defendant's motion for second suppression hearing. Defendant gives "reasons" for his requested hearing, many of which are completely irrelevant, such as:
>
> •  Statements taken in violation of defendant's Fifth and Sixth Amendment right to new counsel
>
> •  Statements of non-testifying co-defendants under the confrontation clause of the Sixth Amendment
>
> •  The application of the harmless error doctrine during a determination of the admissibility of a defendant's statement at trial.
>
> There is no provision in the Constitution for a defendant to get "new" counsel before statements are admissible.  Defendant has no co-defendant.  And the harmless error doctrine is only applied after the fact, i.e., during an appeal, not during the pretrial stage of a case.
>
> In addition, defendant's motion states incorrect law, i.e., "the prosecution may not use statements elicited through custodial interrogation", citing the Fifth Amendment and Miranda v. Arizona.  However, neither legal authority says any such thing.  The Fifth Amendment protects the defendant from forced incrimination.  Miranda v. Arizona states generally that Miranda warnings are required prior to custodial interrogation.  Most of defendant's motion deals with the very same issues that have already been litigated in the first motion to suppress.
>
> It is
>
> ORDERED that by January 22, 2013, defendant file a supplemental motion providing the following information:

---

[1] This word is not completely legible in defendant's motion.  I am unable to determine exactly what he wrote or what he means.

5

1. What statement(s) his motion seeks to suppress. Defendant shall give a brief description of the subject matter of each statement, when and where the statement was given and to whom, and whether the statement was oral or written. In addition, he should provide a brief description of why he believes each statement was illegally obtained by the police.

2. What statement(s) were taken between arrest and presentment and how much time elapsed from the time he was arrested to the time he was presented before a court.

It is further

ORDERED that within seven days after the filing of defendant's supplemental motion, the government file a response to the motion.

Once defendant's supplemental motion is received I will determine if a hearing is required. If a hearing is held, it will not be held before the district judge as requested by defendant -- the district judge has referred this case to me for processing and will make a de novo review of my Report and Recommendation as was done for the last motion to suppress filed in this case.

Finally, defendant is reminded that no issue that has been litigated in the previous motion to suppress will be addressed again. Therefore, defendant is not to reargue (as he does in the current motion) any issue relating to the stop or inventory search of his car. Only defendant's statement(s) will be addressed in litigating this motion to suppress.

On January 24, 2013, defendant filed his supplemental motion (document number 142). Defendant's supplemental motion states in part as follows:

Comes now, Defendant George B. Harris, Pro Se for the "denial" of the supplemental motion to suppress. Due to the fact that, I don't want [to] specify certain parts of my suppression hearing. I believe the whole hearing should be herd [sic]. And to specify whether the statement was written or oral is totally and completely irrelevant! There is no such thing as a partial suppression hearing. That is what was wrong at the "first hearing". There were to [sic] many unanswered questions. One of the most important things before, we were not prepared. Mr. Raymond did not bring the "government response and suggestions" to the correction facility until 04-06-2012 a Friday. My hearing was that Monday 04-09-2012, not only was that a problem, I did not get my "police stop transcript," until the morning of my suppression hearing. And that was the most important of the whole suppression hearing and all questions. It was the perfect "design" by the government. The defendant had no defense and my attorney went alone [sic] with all of it!! I pray that the court understand [sic] that I was poorly represented. Even Magistrate Larsen had to stop the hearing, so that Mr. Raymond could tell me about my "Fifth Amendment" rights.

2. Question: What statements were taken between arrest and presentment and how much time elapsed from the time he was arrested to the time he was presented before a court?

6

I don't understand Question #2, because that can't be the only reason for my suppression hearing. Because you will just find my [sic] guility [sic] again. The whole stop was "racial profiled." I was not speeding, I did not pass him twice at 75 mph, and he can't look at cars and tell how fast they are going, I don't care how many radar certificates he has. Between 75th and 85th St. is one mile. At 75 mph passing him twice, we would have passed 85th St. two times. But if I understand Question #2 correctly I made only one statement, and I never was in court until I came to Federal Court August 09, 2011. At the City Jail as I was being released. They said if the Federal Government decides to pick-up [sic] the charges on this case. They will get in touch with you. Unfortunately I was never "summon" to appear in court, I never got a phone call, three months after my Indictment I was arrested in the "Grandview Police Station while getting my work license. I was not trying to hide or run from custody, I actully [sic] went to the Police Station. But one other thing, I was charged be [sic] any other Judge for this Crime. So I still don't understand why the Federal Government have me in custody.

ORDERED: The Defendant would prefer to reargue any issue relating to the stop and inventory search of my wife's car. I don't believe anything about the police stop was legal. The felony stop was totally "unconstitutional" with his "gun" drawn was illegally done. I was not speeding, he even admits that it "appear" I was speeding, not that I was speeding, I appear to be speeding. Being radar certified, does not prove you to be perfect.

On January 31, 2013, the government filed a response to defendant's motion (document number 144). The government points out that defendant (1) attempts to re-litigate the stop, which the court specifically indicated he was not to do; and (2) fails to specifically describe the statement(s) he wants suppressed, instead indicating that he "made only one statement". The government states:

> The "statement" about which defendant refers may be the post-arrest, post-<u>Miranda</u> recorded confession that defendant gave to Detective Holly King, Kansas City, Missouri Police Department on May 1, 2011, a copy of the transcript of that statement is attached hereto as Exhibit A. [Footnote: During the custodial interview, Harris read his <u>Miranda</u> rights from the form provided to him, waived them, and (1) admitted that he was a convicted felon, that (2) he had knowledge of the firearm's presence in the vehicle, and that (3) he had handled the firearm. The suppression motion (Doc. 54) filed on March 23, 2012, by Assistant Federal Public Defender William Raymond on March 23, 2012, makes no claim that the statement was obtained illegally by the police. Discovery relating to this statement (reports recording and transcript) was previously made available to defense and is also contained in the discovery notebook available for defendant's review at the United States Marshall's [sic] office.] In the instant motion, defendant does not state why he believes the "statement" was illegally obtained by the police, if in fact he believes it was unlawfully obtained.
>
> During the interview, Detective King told defendant that his case would be submitted to the prosecutor who would decide whether or not charges would be pursued. It appears that in the instant motion, defendant references Detective King's aforementioned explanation about the charging decision process when he states that,

7

"They said if the Federal Government decides to pick up charges on this case. They will get in touch with you." (Doc. 142.) Following his interview with Detective King, defendant was released from police custody. Defendant was indicted on the instant charge on May 23, 2011. Defendant's statement, "Unfortunately I was never 'summon' to appear in court, I never got a phone call, three months after my indictment I was arrested in the 'Grandview Police Station' while getting my work license. I was not trying to hide or run from custody, I actully (sic) went to the police station" presents no claim of unlawful conduct by the police or government.

Likewise, the statements of defendant, "But one other thing, I was charged be (sic) any other judge for this crime. So, I still don't understand why the Federal Government have me in custody" present no claim of unlawful conduct by the police or government. (Doc. 142, p. 2.) Defendant's statement, "So I still don't understand why the Federal Government have me in custody" (Doc. 142, p. 2) is not credible.

4. By his own admission, defendant merely seeks here to "reargue" issues relating to the stop and inventory search of his wife's car. For that reason and because he makes no claim of statements being obtained unlawfully by the police, the instant motion to suppress should be denied in its entirety.

Although the government attaches to its response a copy of the Investigative Report of defendant's post-arrest interview, because I have determined that no evidentiary hearing is necessary, I have not reviewed this exhibit.

Defendant's motion and supplemental motion do not challenge the constitutionality of any statement made to police. The statement made during the arrest has already been addressed and fully and fairly litigated during the first motion to suppress. Therefore, if the "one statement" to which defendant refers is that one, his remedy is to challenge the court's denial of his motion to suppress that statement if he is convicted and appeals his case to the Eighth Circuit Court of Appeals. If defendant is referring to the second statement -- the one the government has attached to its response -- he has failed to indicate any grounds for its suppression. In fact, my January 7, 2013, order specifically directed defendant to identify what statements his motion seeks to suppress. Defendant was told to give a brief description of the subject matter of each statement, when and where the statement was given and to whom, and whether it was oral or written. Defendant declined to provide that information, stating only that in his opinion that information is irrelevant.

8

Defendant has attempted to argue over and over again that he should not have been stopped. His newest approach -- racial profiling -- is completely meritless. It was impossible to determine defendant's race before he was stopped. I watched the dash cam video several times. It completely corroborated the officer's testimony and it completely contradicted defendant's testimony at the hearing. Again, defendant's remedy is to argue this to the Eighth Circuit if he is convicted and appeals.

Defendant continues to argue about being in custody. He has filed motions and appeals on the custody issue dozens of times. His motions have been denied by the district court; his appeals have been denied by the court of appeals. A motion to suppress is not a proper avenue for arguing pretrial detention.

Defendant's complaints about his attorney are also premature and without foundation. Ineffective assistance of counsel cannot be raised pretrial. United States v. Evans, 690 F.3d 940, 944 (8th Cir. 2012). Defendant's pointing to my taking a recess so that defense counsel could make sure defendant understood his rights before testifying at a hearing is baseless -- it is very important that any criminal defendant about to testify under oath understand the possible consequences of doing so, and I never permit a criminal defendant to testify without first discussing it with his attorney and making a record of the defendant's understanding of the possible consequences. Defendant also complains that his attorney did not bring the government's response to him until Friday, April 6, 2012, when the hearing was held on Monday, April 9, 2012. However, the government's response was not filed until April 6; therefore, defense counsel could not have provided it to the defendant before that day. He brought the response to defendant for review on the very day he received it. Nothing else that defense counsel has done in this case has been inappropriate.

Defendant has made clear his anger at facing 15 years to life due to the applicability of § 924(e); however, changing attorneys will not change defendant's situation. Despite clearly being concerned about his future, defendant has chosen to do the worst possible thing --

9

represent himself.  Since his waiver of assistance of counsel, defendant has filed nonsensical pleadings, he has spent the majority of his time arguing about his custody situation instead of preparing his case for trial, and he has failed to abide by the directives of the court when filing motions.  Defendant has been told dozens of times that proceeding to trial without the benefit of counsel is "dangerous" and "disadvantageous."  See United States v. Kiderlin 569 F.3d 358, 364 (8th Cir.), cert. denied, 130 S. Ct. 654 (2009).  I will once again strongly encourage defendant to reconsider his decision to forego the assistance of counsel.

Based on all of the above, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion and supplemental motion to suppress statements.

Defendant is advised that, pursuant to 28 U.S.C. § 636(b)(1), he has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 7, 2013